UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANNI RUTH G.**,[1] | ) **NO. CV 17-6850-KS** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **NANCY A. BERRYHILL**, **Acting** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |
| _____ | ) |

**INTRODUCTION**

Janni Ruth G. ("Plaintiff") filed a Complaint on September 18, 2017, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). On September 14, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 21.) On September 17, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 22, 23.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

25.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings.  (*See id*.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 26, 2014, Plaintiff, who was born on June 24, 1958, filed an application for a period of disability and DIB.[2]  (*See* Administrative Record ("AR") 173.)  Plaintiff alleged disability commencing November 14, 2012 due to:  hypothyroidism; high blood pressure; depression; fibromyalgia; back pain; arthritis; and rheumatoid arthritis.  (AR 173, 195.)  Plaintiff previously worked as an admissions clerk (DOT 205.362-018) and as a benefits clerk (DOT 205.567-010)[3].  (AR 68-69, 197.)  After the Commissioner denied Plaintiff's applications initially (AR 89) and on reconsideration (AR 102), Plaintiff requested a hearing (AR 112-17).  Administrative Law Judge Lesley Troope ("ALJ") held a hearing on January 21, 2016.  (AR 34.)  Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") John Komar.  (AR 34-76.)  On March 9, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application.  (AR 19-28.)  On August 8, 2017, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017.  (AR 21.)  The ALJ further found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 14, 2012.  (AR 21.)

---

[2]     Plaintiff was 54 years old on the alleged onset date and thus met the agency's definition of a person closely approaching advanced age.  *See* 20 C.F.R. § 404.1563(d).  Plaintiff has since changed age categories twice and is now a person of advanced age.  *See id.* § 404.1563(e).

[3]     The ALJ cited DOT 205.567-019 but the DOT code for benefits clerk II is 505.567-010.

2

The ALJ determined that Plaintiff had the following severe impairments: "degenerative joint and degenerative disc disease of the cervical lumbosacral and thoracic spine, lupus, and skin cancer." (AR 21.) In reaching that determination, the ALJ found that Plaintiff's diagnosis of fibromyalgia was not a medically determinable impairment and Plaintiff's depression was non-severe. (AR 22.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 24.) The ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> [L]ift and carry 20 pounds occasionally, 10 pounds frequently, standing and walking for 6 hours in an 8-hour workday, sitting for 8 hours. [Plaintiff] is precluded from climbing ropes, ladders, and scaffolds, but can perform all other postural activity frequently. [Plaintiff] is precluded from outdoor work, including concentrated exposure to extreme cold and vibration. [Plaintiff] is also precluded from utilizing a motorized vehicle in the work setting and from exposure to workplace hazards. Finally, [Plaintiff] is limited to frequent handling and fingering with the right upper extremity, but has no other significant limitations.

(AR 24.)

The ALJ found that Plaintiff was able to perform her past relevant work as an admissions clerk (DOT 205.362-018) and a benefits clerk (DOT 205.567-010). (AR 27-28.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 28.)

3

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Three issues are in dispute:  (1) whether the ALJ properly evaluated the credibility of Plaintiff's statements about her symptoms; (2) whether the ALJ properly assessed the medical evidence; and (3) whether the ALJ's determination the Plaintiff's fibromyalgia is not a medically determinable impairment was "free of harmful legal error."  (Joint Stip. at 2-3.) The Court exercises its discretion to begin the analysis with the third issue before considering Plaintiff's claims concerning the ALJ's evaluation of her credibility and the medical evidence.

## I.     Plaintiff's Fibromyalgia

### A.  Medical Evidence

Plaintiff contends that the ALJ erred by failing to find that Plaintiff has a medically determinable impairment of fibromyalgia.    In reaching this conclusion, the ALJ acknowledged two records that listed fibromyalgia as one of Plaintiff's diagnoses (*see* AR 22) (citing Ex. 21F at 10, 19F at 90): an October 6, 2014 note and a December 5, 2014 note from Plaintiff's gastroenterologist, Kumaravel S. Perumalsamy M.D., which indicated that Dr. Perumalsamy's "Impression" was that Plaintiff had multiple medical conditions, including fibromyalgia, fatty liver disease, depression, lupus, arthritis, hypothyroidism, and hypertension (AR 614-15, 736-37).    Plaintiff identifies no other records reflecting a diagnosis of fibromyalgia.  (*See generally* Joint Stip. at 24-25; AR 400-02.)

\\

\\

### B. Applicable Law

The claimant bears the burden of proving at step two of the sequential analysis that she has a medically determinable impairment and that medically determinable impairment, or combination of medically determinable impairments, is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Sutherland v. Comm'r Soc. Sec. Admin.*, 234 F. Supp. 1063, 1068 (D. Or. 2017). In turn, "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments." S.S.R. 96-8p. Accordingly, an ALJ's assessment of whether an alleged impairment is "medically determinable" can have a significant impact on the ALJ's ultimate disability determination.

To be "medically determinable," "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521 (governing claims filed after March 27, 2017); *see also* 20 C.F.R. § 404.1513(a) (governing claims filed before March 27, 2017) ("we need evidence from acceptable medical sources to establish whether you have a medically determinable impairment"). Further, pursuant to Social Security Ruling ("SSR") 12-2p, in determining whether a plaintiff's alleged fibromyalgia constitutes a medically determinable impairment, the Commissioner cannot rely on a physician's diagnosis alone. "The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. S.S.R. 12-2p. Additionally, under the SSR, a person has a medically determinable impairment of fibromyalgia only if: (1) the physician diagnosed fibromyalgia; (2) the diagnosis is not inconsistent with other evidence in the person's case record; and (3) the diagnosing physician provides one of the following two sets of evidence:

(A) (i) a history of pain in all quadrants of the body that has persisted for at least three months; (ii) at least 11 positive tender points on physical

examination; and (iii) other disorders that could cause the symptoms or signs were excluded; or

(B) (i) a history of pain in all quadrants of the body that has persisted for at least three months; (ii) repeated manifestations of six or more symptoms or signs of fibromyalgia, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (iii) other disorders that could cause these repeated manifestations of symptoms or signs were excluded.

S.S.R. 12-2p.

However, "Social Security Rulings do not have the force of law." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989). Accordingly, in *Contreras v. Astrue*, 378 Fed. Appx. 656, 657 (9th Cir. 2010), the Ninth Circuit determined that the ALJ erred in finding that the plaintiff's fibromyalgia was not a medically determinable impairment where the diagnosing physician had supported his diagnosis with clinical findings but had not documented the specific number and location of the plaintiff's tender points. *Contreras*, 378 Fed. Appx. at 657. In support of the reversal, the Ninth Circuit pointed out that a rheumatologist – a doctor with expertise in musculoskeletal disease and systemic autoimmune conditions, including fibromyalgia – had examined the plaintiff, "diagnosed the disease[,] and documented sufficient clinical findings to support his diagnosis." *Contreras*, 378 Fed. Appx. at 657. The Ninth Circuit also noted that the rheumatologist had indicated that the plaintiff struggled "daily . . . with severe fatigue, depression, increase in migraines, and multiple tender points throughout the body;" observed that Plaintiff had tender points in widespread distribution; and opined that the plaintiff was disabled by her fibromyalgia. *Contreras*, 378 Fed. Appx. at 657.

## C. ALJ's Decision

The ALJ acknowledged that Plaintiff "ha[d] been diagnosed with fibromyalgia" and cited the two notes written by Plaintiff's gastroenterologist. (AR 22.) "However," wrote the ALJ, "this diagnosis was rendered by a gastroenterologist, not a rheumatologist or internist, or other medical professional with particular expertise;" "there is no indication that [Plaintiff's] complaints [were] evaluated using any acceptable methodology to diagnose fibromyalgia" but, rather, the gastroenterologist merely relied on Plaintiff's claim of a history of fibromyalgia; and "there is a lack of support for this diagnosis elsewhere in the medical treatment record." (AR 22.) Accordingly, the ALJ found that Plaintiff did not have a medically determinable impairment of fibromyalgia. (AR 22.)

## D. Analysis

Plaintiff contends that the ALJ erred in finding that Dr. Perumalsamy's diagnosis of fibromyalgia was not a "medically determinable" impairment at step two because Plaintiff "has a history of widespread pain in her cervical spine, thoracic spine, lower back, knees, right arm, and right hand" and she "reported fatigue, feeling tired, depression, and anxiety." (Joint Stip at 22.) Plaintiff's description of her symptoms, however, falls short of what is required to satisfy the agency's definition of a medically determinable impairment of fibromyalgia. *Compare* S.S.R. 12-2p (requiring, *inter alia*, either "manifestations of *six* or more" signs or symptoms of fibromyalgia or at least 11 positive tender points on physical examination) (emphasis added) *with* Joint Stip. at 22 (listing only three manifestations of signs of symptoms of fibromyalgia and identifying no positive tender points). Furthermore, the agency's definition of a medically determinable impairment of fibromyalgia requires evidence that other disorders that could cause the plaintiff's repeated manifestations of symptoms or signs were excluded. Plaintiff asserts that the report of neurosurgeon Sean X. Xie, M.D. satisfies this requirement (Joint Stip. at 24-25) (citing AR 402), but the record

8

refutes Plaintiff's assertion. Dr. Xie stated that Plaintiff's "back pain was most likely from her degenerative diseases" – not fibromyalgia – and he stated that his clinical impression was that Plaintiff had "right cervical radiculopathy, right brachial plexopathy" – not fibromyalgia. (AR 402.) Dr. Xie also pointed out that Plaintiff had no bowel dysfunction, one of the signs or symptoms associated with fibromyalgia. (AR 401); *see also* S.S.R. 12-2p.

Furthermore, there is no evidence in the relevant treatment notes that Dr. Perumalsamy reviewed Plaintiff's medical history before including fibromyalgia on his list of clinical impressions. (*See generally* AR 614-15, 736-37.) Similarly, there is no evidence that Dr. Perumalsamy conducted an examination of Plaintiff's musculoskeletal wellbeing. (*See generally* AR 736-37 (October 2014 exam covered Plaintiff's general appearance, eyes, ears, nose, throat, neck, respiratory and cardiovascular systems, gastrointestinal wellness, lymphatic system, neurologic wellbeing, and mental status), 614-15 (December 2014 exam limited to Plaintiff's gastrointestinal wellness).) Finally, during Dr. Perumalsamy's conversations with Plaintiff, Plaintiff denied experiencing several of the signs or symptoms of fibromyalgia that she now claims she experiences. For example, Plaintiff denied "fatigue/weakness," "being tired all the time," and nervousness. (AR 614, 736.) Plaintiff complained solely of depression and back pain, although Dr. Perumalsamy found no evidence of depression, anxiety, or agitation during his October 2014 examination. (AR 736.) Plaintiff also stated on her Adult Function report that her conditions did not affect her memory, ruling out another classic sign or symptom associated with fibromyalgia. (AR 228); *see also* S.S.R. 12-2p.

In sum, Dr. Perumalsamy provided no clinical findings in support of his "impression" of fibromyalgia and his impression is not supported by the medical record as a whole. As such, to the extent that Dr. Perumalsamy diagnosed Plaintiff with fibromyalgia, that diagnosis is wholly conclusory. An ALJ may properly reject a treating physician's

9

conclusions that, like Dr. Permulasamy's, are "brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion). Further, the conclusory nature of Dr. Perumalsamy's "diagnosis" distinguishes this case from the Ninth Circuit's decision in *Contreras*, where the plaintiff had a diagnosis of fibromyalgia from a specialist who had examined her and documented multiple clinical findings consistent with the diagnosis. For these reasons, the Court finds that the ALJ did not err in declining to adopt Dr. Perumalsamy's "diagnosis" at step two.

## II.    ALJ's Evaluation of Plaintiff's Credibility

### A. Plaintiff's Statements

#### 1.   April 15, 2014 Adult Function Report

The second issue in dispute is whether the ALJ properly evaluated the credibility of Plaintiff's statements about her symptoms and limitations. In an Adult Function Report completed on April 15, 2014 Plaintiff made the following statements about her symptoms and limitations. When asked how her conditions limited her ability to work, Plaintiff stated, "Unable to sleep . . . . Cannot type and/or write for long periods of time. Cannot bend and lift anything. Can't sit for prolonged periods of time." (AR 223.) She stated that during the day she showers, dresses, goes to the store if needed, does a load of laundry, watches TV, and makes dinner. (AR 224.) She also stated that she feeds her cat. (AR 224.) She stated that, because of her conditions, she is no longer able to clean the floors and garden. (AR 224.) She stated that it is too hard for her to get in and out of a bathtub independently, so she only takes showers. (AR 224.) Plaintiff stated that she prepares dinner each day: "2 course max." (AR 225.) Plaintiff stated that she typically prepares "frozen burritos, or baked

chicken, or one pan hamburger meals." (AR 225.) Meal preparation takes 30 minutes to an hour. (AR 225.) Plaintiff stated that before her conditions began she used to love cooking and would make "just about anything." (AR 225.) Plaintiff stated that her current hobbies are watching TV, which she does most of the day, but, before her conditions began, she used to do a lot of gardening, made stained glass, swam, and cooked. (AR 227.) She also stated that she does not shop or visit with her friends like she did before her conditions began. (AR 228.)

Plaintiff stated that she is able to do the following household chores: laundry; cleaning the counters; dusting; and outside watering. (AR 225.) She stated that she does laundry and dusts once or twice a week and waters the plants and cleans the counters daily. (AR 225.)

Plaintiff stated that she goes outside daily and is able to get herself around both by walking and driving. (AR 226.) Plaintiff stated that she does grocery shopping twice a week, is able to pay the bills, count change, handle a savings account, and use the checkbook (AR 226), and her ability to handle money has not changed since her conditions began (AR 227). She stated that she does need some help unloading the groceries. (AR 227.) She stated that she does not need special reminders to take care of her personal needs or to take her medications. (AR 225.) Plaintiff stated that she has no difficulties following written instructions and has no difficulties following spoken instructions if they are in a subject with which she is familiar. (AR 228.)

Plaintiff indicated that her conditions caused functional limitations in the following areas: lifting; bending; sitting; kneeling; concentration; and using hands. (AR 228.) She explained that she "cannot kneel to clean flowers + lower cabinets" and her "ability to concentrate is limited." (AR 230.) With regards to her hands, Plaintiff stated that she cannot open jars of food and food packages, has trouble using a can opener, and finds it difficult to remove plastic seals from jars of food or bottles of medicine. (AR 230.)

### 2. *January 21, 2016 Hearing Testimony*

At the January 21, 2016 hearing, Plaintiff testified that she has weakness in her right hand that prevents her from being able to fill a coffee pot, open packages, write with a pen or pencil, or open jars. (AR 44, 45.) She testified that her problems with her right hand prevent her from working with small objects. (AR 58-59.) She testified that she has no problems with her left hand. (AR 44-45.)

Plaintiff testified that, due to degenerative changes in her shoulders, she is able to raise one of her arms but not the other. (AR 51.) Similarly, she testified that she could hold her left arm out to her side (as if to form a 'T' position) but the right arm hurt too much. (AR 51-52.) Plaintiff testified that her medications give her a constant stomach ache. (AR 52.)

When asked to describe in her own words what prevents her from working, Plaintiff testified: "I have difficulty bending down, sitting, walking, or standing, or riding, or driving, or sleeping." (AR 48.) Plaintiff testified that, although she is taking an antidepressant, she continues to experience "anxiety and problems focusing and problems with being motivate[d], wanting to do things. I don't really have set goals for myself or look forward to things. I'm not very social. So I have a lot of friends I used to talk to that I don't talk to anymore and I don't know." (AR 49.) Plaintiff attributed these symptoms to a combination of her depression and her physical conditions. (AR 49-50.) Plaintiff testified that her pain makes her forgetful and agitated. (AR 63-64.) She testifies that she cries a lot and experiences panic attacks. (AR 64.)

Plaintiff testified that she still drives but she cannot look behind her because of her cervical neck and spine issues. (AR 45.) Plaintiff testified that, on an average day, she showers, watches TV, sometimes goes to the store and/or a doctor's appointment, lies down a couple of times to take pressure of her neck and back, does light cleaning, and makes a

one-pan meal for dinner.  (AR 53.)  With regards to cooking, Plaintiff testified that she takes breaks every five to ten minutes to relax her back.  (AR 53-54.)  With regards to cleaning, Plaintiff testified that she washes the sinks and counters and tidies but does not sweep, mop, or vacuum.  (AR 54-55.)  Plaintiff estimated that, in an eight-hour workday, she would need to lie down for half an hour once or twice.  (AR 59.)  Plaintiff testified that her impairments have also interfered with her ability to do some personal grooming – namely, her difficulty bending her neck makes it hard for her to dye her hair in the sink and curl her hair.  (AR 55.)  She testified that she goes to the grocery store maybe three times a week (AR 55), and, while shopping, she leans on the shopping cart (AR 56)  She testified that she can lift a gallon of milk with two hands and might be able to lift it with just her left hand.  (AR 58.)

Plaintiff testified that, with the donut shaped pillow recommended by her physical therapist, she could sit at home for 60-90 minutes.  (AR 56-57.)  She testified that she can stand for 10 minutes before needing to sit down and, similarly, can walk for eight to ten minutes.  (AR 57.)  She similarly testified that she can type for approximately 10 minutes before needing a break.  (AR 59.)  Plaintiff testified that she has suffered from insomnia for "years" but, because of her physical impairments, is now limited to sleeping on her left side.  (AR 60.)  She testified that sometimes she only sleeps for "a couple of hours in a night."  (AR 60.)  Plaintiff testified that on a "bad" day, she cannot get around without experiencing pain, cannot straighten her back, and has to walk with her legs apart.  (AR 61-62.)  She estimated that has two or three bad days a week.  (AR 62.)  She testified that even if she was able to work, she did not think she could retain full time employment because of the frequency of her doctor's appointments.  (AR 62.)  On an average day she testified her pain level is a six on a scale of one to ten and on a bad day her pain level is a nine.  (AR 65.)

\\
\\
\\
\\

13

### B. Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

With respect to the first step, a plaintiff "need not show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused *some* degree of the symptom." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)) (emphasis added). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (quoting *Smolen*, 80 F.3d at 1282); *see also Reddick v. Chater*, 157 F.3d 715, 722 (1998) ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

With respect to the second step, in weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as

14

the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

### C. ALJ's Decision and Analysis

The ALJ stated that she considered Plaintiff's allegations but "due to the lack of consistent medical evidence and the inconsistences in [Plaintiff's] statements and actions" was unable to afford her allegations "full weight." (AR 26.) The ALJ explained that there is a lack of medical evidence indicating that Plaintiff's impairments are as disabling as she claims and, further, "a fundamental disconnect" between Plaintiff's allegations of chronic pain and limitations and her statements and presentation to various medical providers. (AR 26-27.) In particular, the ALJ noted that Plaintiff had denied back pain, had unremarkable clinical presentations, or reported only localized tenderness and reduced range of motion on multiple occasions. (AR 25.) "Considering that [Plaintiff] alleges that her back pain and related symptoms are chronic, and does not allege that these symptoms significantly wax or wane," the ALJ wrote, "these clinical inconsistences are difficult to reconcile." (AR 25.)

The ALJ further explained that, although Plaintiff testified that she experienced chronic right hand symptoms, the treatment record reflected only limited and isolated mentions of hand symptoms. (AR 27.) Similarly, Plaintiff testified that she suffers from chronic abdominal pain due to her medications, but she did not report this side effect to her medical providers and, instead, denied abdominal pain on several occasions. (AR 27.)

"There is ample reason," the ALJ concluded, "to be cautious accepting [Plaintiff's] allegations in the absence of substantial objective medical support."  (AR 27.)

The ALJ's reasons for finding Plaintiff less than fully credible are clear, convincing, and supported by substantial evidence in the record.  As stated above, the Commissioner may use a plaintiff's "prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid" to evaluate the plaintiff's credibility.  *Tommasetti*, 533 F.3d at 1039.

The Court reviewed approximately 450 pages of medical records.  As the ALJ noted, Plaintiff sometimes denied experiencing back pain (*see*, *e.g.*, AR 648 (9/10/15), 614 (10/5/14)), despite describing her back pain to the Commissioner as chronic and unrelenting. Accordingly, the ALJ did not err in citing Plaintiff's inconsistent statements about back pain as a reason for finding Plaintiff less than fully credible.

Plaintiff did mention or receive treatment related to her right hand/arm impairments on several dates:  December 30, 2014 (AR 608); February 2, 2015 (AR 439); July 7, 2015 (AR 398); April 24, 2015 (AR 401); and November 14, 2015 (AR 427).  However, there are no records reflecting any complaints about her ability to use her hands prior to December 30, 2014, and she did not report those difficulties to the examining physiatrist, Fariba Vesali, M.D., on May 20, 2014.  (AR 322.)  Nevertheless, Plaintiff stated in in her April 2014 function report that she had difficulty using her fingers and opening cans.  When, as here, the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1110.  Accordingly, the Court finds that the record adequately supports the ALJ's conclusion that Plaintiff's complaints about her hand and arm impairments were not as consistent as would be expected given her allegations that her right arm and hand were effectively unusable and caused chronic pain.  *Cf. Gutierrez*, 740 F.3d at

522-23 ("Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citations omitted).

The record also supports the ALJ's determination that Plaintiff's statements were less than fully credible because Plaintiff complained to the ALJ that she experienced abdominal pain as a result of her medications but had never reported this side effect to her care providers. (AR 27.) Indeed, as the ALJ noted, Plaintiff repeatedly *denied* experiencing abdominal pain. (*See, e.g,* AR 734 (10/6/14), 703 (6/2/15), 614 (12/5/14), 559 (3/17/15).) Given Plaintiff's inconsistent statements about many of her symptoms, the ALJ did not err in finding that Plaintiff's statements about symptoms and limitations were not fully credible.

### III. ALJ's Evaluation of the Medical Record

The final issue in dispute concerns the ALJ's evaluation of the medical evidence. Plaintiff advances the following arguments in support of her position: (1) the ALJ improperly weighed the opinions of Drs. Nguyen and Rubinoff, who both endorsed brief absences from work (Joint Stip. at 14); (2) the ALJ erred by failing to "reference Dr. Xie, a neurosurgeon," who did not recommend surgery (Joint Stip. at 15); (3) the ALJ did not adequately weigh evidence from the physician assistants and nurse practitioners at Antelope Valley Health Center (Joint Stip. at 15); (4) the ALJ improperly weighed the opinion of Margaret Bryden, a marriage and family therapist (Joint Stip. at 14); and (5) the ALJ erred at step two of the sequential analysis when she found that the medical evidence did not support a finding that Plaintiff had a severe mental impairment (Joint Stip. at 16). Although Plaintiff does not identify any medical evidence assessing Plaintiff with functional limitations more restrictive than those assessed by the ALJ, the Court considers each of Plaintiff's arguments in turn.

## A. Notes of Drs. Nguyen and Rubinoff

Plaintiff contends that the ALJ erred by assigning little weight to the notes of Drs. Nguyen and Rubinoff. Specifically, on February 28, 2011, Dr. Lawrence Rubinoff, M.D., wrote a note stating that Plaintiff would be unable to work for two days. (AR 299.) Almost two years later, on November 13, 2012, Dr. Hong Phuc Nguyen, D.O., stated that Plaintiff would be unable to work for two weeks in 2012 and, upon returning to work, might be limited to working the day shift for a month. (AR 292.) The ALJ did not err in her assessment of these notes. Significantly, Dr. Rubinoff's note concerns Plaintiff's conditions prior to the alleged onset date, and Dr. Nguyen's note expressly indicates that Plaintiff retained the ability to work after taking two weeks off. Furthermore, neither Dr. Rubinoff nor Dr. Nguyen opined that Plaintiff experienced functional limitations greater than those assessed by the ALJ. Accordingly, it is unclear what evidentiary value these notes have for Plaintiff's case, and the ALJ did not err in assigning them little weight on the grounds that "they encompass very brief periods of time, and are insufficient for the purpose of establishing the 12-month durational requirements for disability." (AR 26.)

## B. Findings of Dr. Xie

Plaintiff misstates the ALJ's opinion when she contends that the ALJ failed to discuss Dr. Xie's opinion that Plaintiff was not a candidate for surgery. In fact, the ALJ quoted Dr. Xie's opinion that Plaintiff's "symptoms did not quite correlate with any of her diagnostic findings. For that reason, any surgical intervention would not likely help her pain." (AR 27) (quoting AR 399). Plaintiff may wish that the ALJ had drawn a different conclusion from Dr. Xie's decision not to recommend surgery (*see* Joint Stip. at 15) ("this neurosurgeon's reluctance to operate on [Plaintiff] likely had to do with the fact that she was ultimately suffering from chronic pain associated with fibromyalgia"), but "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities." *Andrews*, 53 F.3d at 1039. Further, Plaintiff's interpretation of Dr. Xie's opinion – that Plaintiff's fibromyalgia made surgery inappropriate – is not supported by the record because Dr. Xie made no mention of fibromyalgia as either a diagnosis or a possibility. Accordingly, the Court finds no error with the ALJ's interpretation and analysis of the records from Dr. Xie.

### C. Physician Assistants and Nurse Practitioners at Antelope Valley Health Center

Plaintiff also contends that the ALJ erred in her analysis of the "evidence from the physician assistants and nurse practitioners at Antelope Valley Health Center," but Plaintiff does not point to any specific opinion or medical source statement that the ALJ improperly weighed or overlooked. (*See generally* Joint Stip. at 15.) Instead, Plaintiff asserts that the ALJ committed an unspecified error and cites for support almost 250 pages of medical records. (*See* Joint Stip. at 15) (citing AR 526-774). Despite the vagueness of Plaintiff's briefing, the Court reviewed these 250 pages of records, which reflect, *inter alia*, melanoma lesion removal surgery, MRIs, blood test results, and EMG and nerve conduction studies. The Court found that the ALJ adequately discussed and analyzed the relevant portions of this part of the medical record. (*See, e.g.*, AR 25 (discussing, *inter alia*, parts of Exhibits 19F, 20F, and 21F).)

### D. Statement of Margaret Bryden

With respect to Plaintiff's mental impairment, Plaintiff alleges that the ALJ erred by assigning little weight to the December 2015 statement of Margaret Bryden, a marriage and family therapist. The ALJ assigned little weight to Bryden's statement because she was not an acceptable medical source, as defined by the agency, and her statement concerned Plaintiff's physical impairments. (AR 23.) Indeed, Bryden's statement primarily concerned

Plaintiff's physical conditions and ultimately concluded that Plaintiff's physical limitations contributed to Plaintiff's depression. (AR 442.) Bryden did not assess any functional limitations arising from Plaintiff's "issues with depression or anxiety." (AR 442.) Acccordingly, to the extent that the ALJ erred in assigning it little weight, the error is harmless because it is inconsequential to the ALJ's ultimate nondisability determination.

### E. Finding At Step Two of the Sequential Analysis

Finally, Plaintiff contends that the ALJ erred in failing to find that her mental impairments were severe at step two of the sequential analysis. The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, *inter alia*: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1522. "An impairment or combination of impairments may be found not severe *only if* the evidence establishes a *slight* abnormality that has no more than a *minimal* effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted). Step two "is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [her] conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted). The claimant bears the burden of proof at step two. *See Bowen*, 482 U.S. at 146; *Sutherland*, 234 F. Supp. at 1068.

Plaintiff points to no medical evidence in the record establishing that she has a mental impairment that significantly limits her ability to do any basic work activity. Significantly, the record reflects only cursory psychiatric treatment. In early 2015, Plaintiff had two

appointments with psychiatrist John C. Beck, M.D., who diagnosed Plaintiff initially with "depression generated somatization" (AR 440 (February 2, 2015)) and subsequently revised the diagnosis to "situational stress" (AR 437 (March 5, 2015 appointment)). Plaintiff also had two appointments with Dr. Del Rosario, a second psychiatrist, in late 2015. (AR 443-44.) Dr. Del Rosario diagnosed Plaintiff with major depressive disorder but did not assess any functional limitations arising from this diagnosis or identify any functional deficits in the treatment notes. (AR 443-44.) Additionally, as discussed above, Plaintiff saw Bryden for talk therapy, but Bryden did not assess any functional limitations arising from Plaintiff's alleged mental impairments, the record does not contain any records of her treatment of Plaintiff, and Bryden did not disclose how many times she saw Plaintiff between the date of Plaintiff's initial evaluation (September 10, 2015) and the date of her source statement (December 9, 2015). (AR 442.) Finally, in May 2014, Sherri Love, Psy.D., performed a comprehensive psychiatric examination of Plaintiff at the Commissioner's request and diagnosed Plaintiff with depression based on historical records only, assessed a GAF score of 65[4], indicating "some mild symptoms" but nothing more, and identified no functional limitations arising from Plaintiff's alleged mental impairments. (AR 317-20.) In sum, despite carrying the burden of proof at step two, Plaintiff failed to present a single medical source statement or psychiatric treatment record indicating that she had a mental impairment that significantly limited her ability to perform a basic work activity. Accordingly, although step two is a *de minimis* screening device, the ALJ did not err in finding that Plaintiff had failed to establish at step two that she had a severe mental impairment.

\\

\\

\\

---

[4]     A GAF score of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (revised 4th ed. 2000). The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale. Diagnostic And Statistical Manual Of Mental Disorders 16 (5th ed. 2012).

**CONCLUSION**

The Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: January 8, 2019

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE